IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
APR - 5 2018
CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:18-mj-165 |
| ) | |
| SINGH SARBJIT GHUMMAN, ) | |
| ) | |
| a/k/a "Parmjit Singh," ) | |
| ) | |
| Defendant. ) | |
| ) | |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

### Agent Background and Introduction

I, Paul F. Deem having been duly sworn, hereby depose and say:

1. I am a Special Agent with the U.S. Department of State, Diplomatic Security Service ("DSS"). I have been a Special Agent with DSS since April 2017 and am presently assigned to the Washington Field Office. I received training in criminal investigation procedures at the Federal Law Enforcement Training Center and also in specialized training specific to passport and visa fraud at the Department of State Diplomatic Security Training Center. As a Special Agent, I am authorized to investigate violations of the laws of the United States, and I am a Federal Law Enforcement Officer with authority to execute warrants issued under the authority of the United States. Prior to being a Special Agent, I served in the U.S. Army for over 20 years, including 15 years as an Intelligence Officer.

2. This affidavit is submitted in support of a criminal complaint and an arrest warrant for SINGH SARBJIT GHUMMAN, also known as Parmjit Singh. Based on the

1

information detailed below, I submit that there is probable cause to believe that, within the Eastern District of Virginia and elsewhere, GHUMMAN procured citizenship and naturalization unlawfully in violation of 18 U.S.C. § 1425(a).[1] Specifically, I submit that there is probable cause to believe that GHUMMAN applied for political asylum in the United States under the name of Parmjit Singh, was denied asylum and ordered deported, remained illegally in the United States under this real name where he attained naturalized citizen status, applied for and received a U.S. Passport, and used that passport for international travel at least seven times.

3. The facts and information contained in this affidavit are based upon my personal knowledge of the investigation and observations of other officers and agents involved in the investigation, as well as a review of documentary evidence.

4. This affidavit contains information necessary to support probable cause for this criminal complaint and arrest warrant. This affidavit is not intended to include each and every fact and matter observed by me or known by the government.

**Background of Operation Janus/Targeted Groups Of Inadmissible Subjects**

5. In 2016, the DSS Washington Field Office received a list of subjects in the District of Columbia metropolitan area who the Department of Homeland Security ("DHS") identified during Operation Janus/Targeted Groups Of Inadmissible Subjects ("TGIS") as having fraudulently naturalized as U.S. citizens. TGIS is a DHS effort to prevent individuals who were ordered deported or removed under another identity from obtaining or retaining many of the rights and privileges of U.S. citizenship, including serving in law enforcement, obtaining a

---

[1] Pursuant to 18 U.S.C. § 3291, the statute of limitations for this offense is 10 years. The statute of limtations begins to run from the completion of the offense, which is the date of naturalization, which is May 4, 2009.

2

security clearance, sponsoring other aliens' entry into the United States, or procuring travel documents, such as U.S. passports. DHS formally requested DSS to investigate TGIS subjects for passport and visa fraud.

## Statement of Probable Cause

6. On May 19, 2016, a Homeland Security Investigations ("HSI") Forensic Laboratory conducted comparisons of the fingerprints on file for GHUMMAN and Singh, which were linked by TGIS because they both are assigned the same unique Fingerprint Identification Number. The fingerprint identifications were established by a comparative analysis of the ridge detail of the fingerprint impressions in question. HSI Senior Fingerprint Specialist Dean R. Roan compared the fingerprint impression appearing on both the GHUMMAN and Singh files and conluded the fingerprint impressions "were made by the same person."

7. On October 30, 1995, GHUMMAN submitted an asylum application under the name Parmjit Singh in San Diego, California. In the asylum request, GHUMMAN claimed to have entered the United States on or about April 1, 1995, at or near San Ysidro, California. GHUMMAN submitted purported evidence of a membership in the "Sikh Student Foundation" in India and professed evidence of torture by the Indian authorities. The Immigration and Naturalization Service ("INS") denied GHUMMAN's asylum request due to a lack of credibility on material points in his testimony. As a result, on June 5, 1996, Immigration Judge Thomas J. Schiltgen ordered GHUMMAN (under the name of Parmjit Singh) deported from the United States to India. There is no record that GHUMMAN complied with this deportation order.

8. On February 26, 2001, GHUMMAN filed for Legal Permanent Residency ("LPR") status in the United States as a spouse of a U.S. Citizen. In his application for LPR,

GHUMMAN submitted proof of a January 30, 2001, marriage to Rochelle Agatha Chapman in Alexandria, Virginia. Chapman is a native born U.S. citizen. In the LPR request, GHUMMAN stated that he last entered the United States in New York, New York, on February 15, 1992, with a B1/B2 Nonimmigrant Visa Control Number 0120056, dated February 3, 1992. GHUMMAN also presented a copy of an Indian passport containing the B1/B2 visitor visa. A May 22, 2017, inquiry with the Department of State Bureau of Consular Affairs Non-Immigrant Visa Records revealed that there is no record of the B1/B2 Visa Control Number that appears in GHUMMAN's Indian passport, nor is there a record of an application from GHUMMAN on the date reflected on the visa. Additionally, DSS is unable to find record of anyone matching the identity of GHUMMAN or his presented documents having entered the United States in February 1992 through any authorized port of entry.

9. On December 16, 2016, DSS submitted a request to the government of India for verification of the certificates of birth presented to the U.S. government in the names of GHUMMAN from the 2001 LPR request and for Parmjit Singh from the 1995 asylum request. On February 9, 2017, the government of India responded that it was unable to verify the authenticity of either certificate, and stated that the certificates were not issued by the office that the documents list as the originating authority and that the certificates are without the proper signatures.

10. GHUMMAN's true identity, and when, where, and how he entered the United States is unknown to DSS.

11. GHUMMAN became a conditional LPR[2] of the United States on July 2, 2002. On June 21, 2004, after retaining LPR status in Alexandria, Virginia, for a period of two years, GHUMMAN filed to remove the conditions of his LPR status. This request was approved on November 8, 2004. Soon after receiving unconditional permanent residency, GHUMMAN filed for divorce from Chapman, and the marriage legally ended on May 12, 2006. According to immigration documents, on May 19, 2006, nine days after divorce from Chapman, GHUMMAN traveled to India, and on June 4, 2006, married Sandeep Kaur, who was at that time a citizen of India. Following the marriage, GHUMMAN traveled back to the United States. Kaur remained in India where, as a spouse of a LPR, she applied for an immigrant visa at the U.S. Embassy in New Delhi. GHUMMAN sponsored Kaur throughout her process, and Kaur is now also an LPR. GHUMMAN and Kaur reside together in Alexandria, Virginia.

12. On July 27, 2007, GHUMMAN filed an application for naturalization with the U.S. Citizenship and Immigration Service in Alexandria, Virginia. On the Application for Naturalization Form N-400, GHUMMAN provided multiple false statements. GHUMMAN falsely stated that: (1) he had never used any other names; (2) he had never given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion or removal; (3) he had never lied to any U.S. government official to gain entry or admission into the United States; (4) there were no removal, exclusion, rescission or deportation proceedings pending against him; and (5) he had never been

---

[2] A conditional permanent resident has a green card that is valid for two years and cannot be renewed. To remain a permanent resident, the LPR must file a petition to remove the conditional status.

ordered to be removed, excluded or deported from the United States. Based on the information contained elsewhere in this affidavit, each of these statements is false.

13. GHUMMAN's application for naturalization was in the review process for a period of approximately two years and, on May 4, 2009, GHUMMAN became a naturalized U.S. citizen. Had GHUMMAN provided truthful answers in his application for naturalization, he would not have been approved for naturalization and would not have become a naturalized citizen of the United States.

14. On October 21, 2009, GHUMMAN applied for a U.S. passport using the fraudulently obtained U.S. citizenship. Because GHUMMAN based his passport application on a naturalization that was procured by fraud, the passport application is also fraudulent. On November 17, 2009, U.S. Department of State issued GHUMMAN U.S. passport number 466135285.

15. Since obtaining his fraudulent U.S. passport, GHUMMAN has used the fraudulent U.S. for international travel into or out of Dulles International Airport ("Dulles") on the following occasions: (1) On or about March 3, 2010, departing from Dulles and arriving at Heathrow Airport near London, England; (2) On or about June 21, 2010, departing from Heathrow Airport near London, England, and arriving at Dulles; (3) On or about August 18, 2015, departing from Dulles and arriving at Charles de Gaulle Airport near Paris, France; (4) On or about September 9, 2015, departing from Amersterdam Airport Schiphol near Amsterdam, Netherlands, and arriving at Dulles; (5) On or about October 19, 2016, departing from Dulles and arriving at Frankfurt Airport in Frankfurt, Germany; and (6) On or about November 3, 2016, departing from Kloten Airport in Zurich, Switzerland, and arriving at Dulles Airport.

## Conclusion

16. Based on my training and experience and the facts set forth in this affidavit, I assert there is probable cause to believe SINGH SARBJIT GHUMMAN, also known as Parmjit Singh, in the Eastern District of Virginia and elsewhere, procured citizenship and naturalization unlawfully in violation of 18 U.S.C. § 1425(a). I respectfully request the Court consider these facts and issue an arrest warrant for SINGH SARBJIT GHUMMAN.

Paul F. Deem
Special Agent
U.S. Department of State
Diplomatic Security Service

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 5 th DAY
OF April 2018

/s/
Michael S. Nachmanoff
United States Magistrate Judge

The Honorable Michael S. Nachmanoff
United States Magistrate Judge
Alexandria, Virginia